**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LANEEKA A. WHITE, | ) | **Case No.  1:12 CV 943** |
| | ) | |
| **Plaintiff,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| vs. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| WELLS FARGO BANK, NA, | ) | |
| | ) | |
| **Defendant.** | ) | |

Before the Court is Defendant's Motion to Dismiss ("Motion") (**Doc #: 7**).  The Court

has reviewed the motion, the opposition brief (Doc #: 19), and the reply brief (Doc #: 22).  For

the following reasons, the Motion is **GRANTED** in part and **DENIED** in part.

**I. Background**

On October 24, 2008, Plaintiffs Laneeka White and Timothy Reese bought a car from

Cresmont Chrsyler Jeep in Beachwood, Ohio.  To finance the car, they entered into a Retail

Installment Sales Contract with Cresmont.  Cresmont subsequently assigned the contract to

Defendant Wells Fargo.  A choice-of-law provision states that Federal law and Ohio law shall

apply to the contract.   The contract also provides that, in the event of default and repossession,

> [Wells Fargo] will sell the vehicle if you do not get it back.  If you do not do what
> is required to get the vehicle back, we will sell the vehicle.

> [Wells Fargo] will apply the money from the sale, less allowed expenses, to the
> amount you owe.  Allowed expenses are expenses we pay as a direct result of
> taking the vehicle, holding it, preparing it for sale, and selling it.

(Doc #: 1-2).

In September 2011, Plaintiffs defaulted on the loan, and Defendant repossessed the

vehicle.  On September 14, 2011, Defendant issued to Plaintiffs a "Notice of Our Plan to Sell

Property" ("Notice of Sale") informing them the vehicle would be sold at public auction.

Defendant also sent a "Notice of Intention to Dispose of Motor Vehicle" ("Redemption Notice")

advising Plaintiffs of their right of redemption.

According to the Notice of Sale, the public sale would occur on October 20, 2011; in

fact, the sale was not held until November 3, 2011.  The Notice of Sale stated the minimum

acceptable bid would be $14,850; the actual selling price, however, was $9,600.  Defendant

applied the sale proceeds to the balance due under the contract, though it was not enough to

make up for the deficiency.  Defendant therefore sent Plaintiffs a Deficiency Notice, which

included, among other charges, "collection fees" in the amount of $1291.21.

In an effort to recover the deficiency and the collection fees, Defendant filed suit against

Plaintiffs in state court, asserting its right to retain the vehicle in accordance with Ohio Revised

Code ("ORC")§ 1317.02.  Defendant later voluntarily dismissed the case without prejudice.[1]

In this putative class action, Plaintiffs allege Defendant committed multiple violations of

the Ohio Retail Installment Sales Act ("RISA"), ORC § 1317.01 *et seq.*, and the Ohio Uniform

Commercial Code ("OUCC"), ORC § 1309.101 *et seq.*, by failing to disclose the correct date of

the public sale, by failing to disclose the correct minimum bid, by failing to conduct a

commercially reasonable sale, and by charging prohibited fees—"collection fees."  Plaintiffs

---

[1] *See Wells Fargo Dealer Services v. Timothy Reese, et. al.*, No. CV11764474, Cuyahoga
County Court of Common Pleas (Dec. 19, 2011).

also assert breach of contract and unjust enrichment claims.

Plaintiffs seek class certification, an order declaring Defendant's acts unlawful, an injunction preventing Defendant from seeking to collect any alleged deficiencies, an order declaring that any alleged deficiencies of the proposed class members are not owed, an order requiring Defendant to remove any adverse credit information previously reported to credit reporting organizations, restitution, compensatory damages, statutory damages,  pre- and post-judgment interest, attorney fees, costs, and expenses.

## II. Standard of Review

Defendants' pending 12(b)(6) motion seeks dismissal of all of Plaintiffs' claims.  A 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## III. Statutory Claims

Defendant does not deny it failed to comply with RISA and OUCC.  Instead, it argues the statutory claims are preempted by the National Banking Act ("NBA"), 12 U.S.C. § 1 *et seq.*, and the  implementing regulations promulgated by the Office of Comptroller Currency ("OCC").  Congress has authorized the OCC to promulgate those regulations.  12 U.S.C. § 93a; *Fid. Fed. Savs. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152 (1982).

There are three ways federal law may preempt state law: express preemption; field

preemption; and obstacle preemption. First, a state law is expressly preempted when federal law

explicitly so states. *See Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977). Second, Congress

can so extensively regulate a given industry that, in effect, the federal government "occupies the

field" and leaves no room for state regulation. *See Rive v. Santa Fe Elevator Corp.*, 331 U.S.

218, 230 (1947). Third, a state law will not be effective against federal law if the state law

functions "as an obstacle to the accomplishment and execution of the full purposes and

objectives of Congress." *Barnett Bank of Marion Cty. V. Nelson*, 517 U.S. 25, 31 (quoting *Hines

v. Davidowitz*, 312 U.S. 52, 67 (1941)). While the courts have carved out these three categories

of preemption, they are often conflated with one another, and, as a result, demand a hybrid

analysis that requires pulling from one category to fully analyze another. *See, e.g.*, *Epps v. JP

Morgan Chase Bank*, 675 F.3d 315, 323 (4th Cir. 2012) (combining express and conflict

analysis).

Defendant argues that the NBA and OCC regulations fall under all three preemption

categories. First, Defendant argues that 12 C.F.R. § 7.4008(d) expressly preempts state laws like

RISA and the OUCC. Second, Defendant argues that because there is such a long history of

federal regulation of the banking industry, there is a strong presumption in favor of preemption

as the federal government has "occupied the field." Third, Defendant argues that RISA and the

OUCC are in conflict with federal law and therefore create an obstacle to the bank's exercise of

its powers because they prevent the bank from collecting entirely on money that had previously

been lent.

**A. Express Preemption**

The state laws at issue in this case, RISA and the OUCC, require creditors to follow

specified procedures when repossessing and disposing of consumers' vehicles.  O.R.C. §

1317.12 reads in pertinent part:

> [I]f collateral for a consumer transaction is taken possession of by the secured
> party on default, the secured party shall, within five business days after taking
> possession, send to the debtor a notice setting forth specifically the circumstances
> constituting the default and the amount by itemization that the debtor is required
> to pay to cure the default. Any notice required by section 1309.611 or 1317.16 of
> the Revised Code may be included as part of the notice required by this section.

Section 1317.16(B) specifies that disposition of collateral may be made at public sale only and

that:

> At least ten days prior to sale the secured party shall send notification of the time
> and place of such sale and of the minimum price for which such collateral will be
> sold, together with a statement that the debtor may be held liable for any
> deficiency resulting from such sale, by certified mail, return receipt requested, to
> the debtor at the debtor's last address known to the secured party, and to any
> persons known by the secured party to have an interest in the collateral. In
> addition, the secured party shall cause to be published, at least ten days prior to
> the sale, a notice of such sale listing the items to be sold, in a newspaper of
> general circulation in the county where the sale is to be held.

As a penalty for failing to abide by these notice requirements, O.R.C. § 1317.12 provides

that "[a] secured party who disposes of the collateral without sending notice required by this

section may not recover the costs of retaking possession of the collateral and is not entitled to a

deficiency judgment."

The OUCC has similar notification requirements, including a provision requiring a

secured party to send a notice of disposition stating "the time and place, by identifying the place

of business or address or by providing other information that, in each case, reasonably describes

the location of a public disposition or the time after which any other disposition is to be made."

O.R.C. § 1309.613(e).  In addition to the notice provisions, § 1309.610(B) requires that "[e]very

aspect of a disposition of collateral, including the method, manner, time, place, and other terms,

must be commercially reasonable." The punishment for violating the OUCC notice provisions includes statutory damages in the amount of the "credit service charge" plus ten (10%) percent of the principal amount borrowed. O.R.C. § 1309.625(C)(2).

Defendant argues that 12 C.F.R. § 7.4008(d), an OCC regulation, preempts RISA and the OUCC. That regulation provides:

> A national bank may make non-real estate loans without regard to state law limitations concerning:
> ...
> (8) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or **other credit-related documents**.

12 C.F.R. § 7.4008(d) (emphasis added); (Doc #: 7 at 6). Defendant argues that repossession notices qualify as "other credit-related documents" and, therefore, state laws concerning repossession notice requirements—including RISA and OUCC—are expressly preempted.

Defendant's argument fails to take account of the words that accompany the phrase "other credit-related documents": information to be included in "credit application forms," "credit solicitations," "billing statements," and "credit contracts." 12 C.F.R. § 7.4008(d)(8). Yet it is a basic principle of statutory interpretation that words are known by the company they keep—*noscitur a sociis*: "all the words used in a list should be read together and given related meaning when construing a statute or regulation." *Aguayo v. U.S. Bank*, 653 F.3d 912, 927 (citing *Schreiber v. Burlington N., Inc.*, 472 U.S. 1 (1985)). The associated words suggest that "other credit-related documents" relates to the documentation in the early stages of loan activity: disclosures and advertisements that occur during the initiation phase of a loan. The phrase does not apply to the end stages of loan activity: collecting on a debt or repossessing the collateral

-6-

securing the debt.  Furthermore, Defendant's argument fails to construe the text of the regulation as a whole by ignoring—and giving no effect to—the savings provision in the very next subsection of the regulation.  The savings provision lists several kinds of state laws that are *not* preempted by the regulations, including state laws having to do with debt collection:

> (e) State laws that are not preempted.  State laws on the following subjects are not inconsistent with the non-real estate lending powers of national banks and apply to national banks to the extent consistent with the decision of the Supreme Court in *Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et al.*, 517 U.S. 25 (1996): . . .
>
> (4) **Rights to collect debts.**

12 C.F.R. § 7.4008(e) (emphasis added).

RISA and the OUCC qualify as laws involving "rights to collect debts." A debt is liability on a claim.  *Black's Law Dictionary* (9th ed. 2009).  Collection is the process through which an item passes.  *Id*.  Repossession is the act of retaking goods sold on credit when the buyer has failed to pay for them.  *Id*.  If consumers fail to abide by the terms of a contract, under RISA, they become indebted on that contract.  O.R.C. § 1317.03.  If consumers are indebted, the retail seller under the contract, or a holder of that contract, has a claim against the consumer.  *Id*. This claim includes the enforceable right of repossession. O.R.C. § 1317.12.  Prior to enforcing this right in court, RISA and the OUCC require that a creditor make certain notifications to a debtor during the process of repossession of collateral.  *See, e.g,*, *id*.; O.R.C. § 1309.613.  If these notification requirements are not met, the creditor "may not recover the costs of retaking possession of the collateral and is not entitled to a deficiency judgment."  O.R.C. §§ 1317.12; 1309.625(C)(2).

The RISA and the OUCC provisions at issue in this case involve a regulatory scheme

governing repossession of motor vehicles as an aspect of debt collection; they thus qualify as

laws governing "rights to collect debts."   Repossession notices are not "other credit-related

documents" related to "disclosure and advertising."  Accordingly, RISA and the OUCC fall

within the ambit of the savings provision, 12 C.F.R. § 7.4008(e)(4), and outside the scope of the

express preemption provision.

The only courts to have addressed these OCC regulations and state-law notice

requirements relating to repossession have reached the same conclusion.  *See Aguayo v. U.S.*

*Bank*, 653 F.3d 912 (9th Cir. 2011), *cert. denied*, *U.S. Bank Nat. Ass'n v. Aguayo*, No. 11-1204,

80 USLW 3570 (Oct.1, 2012); and *Epps*, 675 F.3d 315, 323 (4th Cir. 2012).  The facts in *Aguayo*

and *Epps* are identical to the facts in this case: a state law required certain information be

provided to a debtor once a vehicle has been repossessed, and the notice sent to the debtor

tracked the language of that law but was deficient in the same ways now alleged in this case. *See*

*Aguayo*, 653 F.3d at 916;[2] *Epps*, 675 F.3d at 318.[3]

---

[2]  The court in *Aguayo* was interpreting California's Rees-Levering Act, which:

(1) required disclosure in the conditional sale contract of cash price, fees, taxes, maximum
amount of finance charges, and other dealer-added charges (Cal. Civ.Code § 2982(a)); (2)
limitations on security interests that may be created by conditional sale contracts ( *id.* §
2984.2); (3) required disclosure of a buyer's right to prepay a vehicle purchase contract
without penalty ( *id.* § 2982( *l* )); (4) requirements governing the repossession and resale of
vehicles by the seller or contract holder ( *id.* §§ 2983.2, 2983.3); and (5) a buyer's remedies
when a seller violates the Act ( *id.* §§ 2982.7, 2983.1, 2983.8(b)).

*Aguayo*, 653 F.2d at 919.  This Act, like RISA, prohibits collection of any deficiency if the seller violates the
statutory requirements.  *See* Cal. Civ. Code § 2983.8(b).

[3]  The court in *Epps* was interpreting Maryland's Credit Grantor Closed End Credit Provisions
("CLEC"), which requires that:

a notice be sent within five days after repossession that includes the borrower's rights to
redeem the property, the borrower's rights as to a resale and liability for a deficiency, and the
exact location where the property is stored. [Md.Code Ann., Com. Law], § 12–1021(e).
Furthermore, CLEC requires that, ten days before any sale, notice be given by specified means
as to the time and place of the sale. *Id.* § 12–1021(j)(1)(ii). After a sale of repossessed goods,
CLEC also requires a full accounting to the borrower which includes: expenses related to the
sale; the purchaser's name, address, and business address; and the number of bids sought and

-8-

The *Aguayo* court started its analysis with the words that begin § 7.4008(d)(8):

"Disclosure and advertising."  653 F.3d at 916.  The court explained that "[t]he term 'disclosure'

is commonly used to refer to an informational statement of terms *prior* to entering a transaction."

653 F.3d at 916 (emphasis added).  Per § 7.4008(d)(8), these "disclosures" include "specific

statements, information, or other content to be included in credit application forms, credit

solicitations, billing statements, credit contracts, or other credit-related documents."  12 C.F.R.§

7.4008(d)(8).  The court recognized,

> [t]he choice and arrangement of words in the OCC regulation, starting with
> "[d]isclosures and advertising" and followed by "including," indicate that the
> later words are meant to be examples of types of disclosure and advertising—two
> words that generally mean to present information to the public, particularly before
> or in the process of consummating a transaction.

*Aguayo*, 653 F.3d at 927.  "A notice, on the other hand, is a specific communication of a claim or

demand submitted to a party in the course of, or at the conclusion of, a transaction."  *Id.* at 927.

The Fourth Circuit, in *Epps*, found the Ninth Circuit's reasoning persuasive and agreed "that the

notices here, which only relate to debt collection upon default under an existing loan, are not

'disclosures' within the meaning of the [NBA] and OCC regulations."  675 F.3d at 324.  In sum,

both the Ninth and Fourth Circuits courts have held that § 7.4008(d)(8) does not expressly

preempt state laws relating to repossession notice requirements.

Defendant is not dissuaded by these cases and, for support, Defendant cites *Crespo v.*

*WFS Financial, Inc.*, 580 F. Supp. 2d 614 (N.D. Ohio 2008).  There the court had to construe a

---

received. *Id.* § 12–1021(j)(2).

*Epps*, 675 F.3d at 318.  The penalty for failure to abide by these terms was also prohibition on collecting the deficiency. *Id.*

regulation with an express preemption clause similar to the express preemption clause in 12 C.F.R. § 7.4008(d).  The court concluded that state laws imposing post-possession notice requirements are expressly preempted.  *Id.*

Despite appearances, *Crespo* is not on point because the regulations at issue in that case, which were promulgated by the Office of Thrift Supervision, do not contain a savings provision exempting laws related to debt collection.  *Compare* 12 C.F.R. § 560.2 *with* 12 C.F.R. § 7.4008(e); *Crespo*, 580 F. Supp. 2d 614.  *See also Aguayo*, 653 F.3d at 921-922 (finding *Crespo* distinguishable).

The Court finds that 12 C.F.R. § 7.4008 does not expressly preempt the repossession notice requirements in either RISA or OUCC.

**B. Field Preemption**

Defendant also argues that RISA and the OUCC are preempted by virtue of the fact that Congress has extensively regulated in the banking industry, such that there is a presumption that the federal government has occupied the field.  To support this position, Defendant again relies upon the ruling in *Crespo*.  Again, this reliance is misplaced.

The court in *Aguayo* observed,

> [W]hile the [Office of Thrift Supervision] and OCC regulations are similar in many ways, *compare* 12 C.F.R. § 560.2(b), (c), *with*, 12 C.F.R. § 7.4008(d), (e), the OCC has explicitly avoided full field preemption in its rulemaking and has not been granted full field preemption by Congress.  *Compare* 12 C.F.R. § 560.2(a) (occupying the field) *with, e.g.*, OCC, Final Rule, 69 Fed. REg. 1904-01, 1910-11 (Jan. 13, 2004), 2004 WL 50763 ("[W]e decline to adopt the suggestion of these commenters that we declare that these regulations 'occupy the field'...").

653 F.3d at 921-22.

Indeed, any doubt the OTC has *not* occupied the field of debt collection is readily dispelled by the savings clause and its specific exemption for laws related to the right to collect

debts.  *See Monroe Retail, Inc. v. RBS Citizens*, 589 F.3d 274 (6th Cir. 2009) (finding that the National Bank Act "does not preempt general state laws governing the rights...to collect debts.").

## C. Obstacle Preemption

State laws are preempted if they significantly interfere with a bank's exercise of its powers.  *Id*.  Defendant asserts that RISA and the OUCC significantly interfere with its powers because the statutory notification requirements "premise Wells Fargo's ability to be repaid by defaulted auto loan borrowers upon detailed state law disclosure requirements."  (Doc #: 7 at 7).  Defendant cites two cases in support of its position:  *Monroe Retail, Inc. v. RBS Citizens*, 589 F.3d 274 (6th Cir. 2009), and *Abel v. Keybank USA, N.A.*, 313 F. Supp. 2d 720, 727 (N.D. Ohio 2004).  These cases, however, cut the other way.

In *Monroe Retail*, several banks were charging service fees for garnishing debtors' bank accounts, and the banks were deducting those fees directly from the accounts.  *Id.* at 277.  According to Plaintiffs, the garnishors, that violated Ohio state law, which requires banks to relinquish the debtors' funds to the garnishors *before* deducting service fees.  *Id.* at 280.  The Sixth Court noted that 12 C.F.R. § 7.4002(a) grants banks broad authority to "charge [their] customers non-interest charges and fees, including deposit account service charges." *Id.* at 281 (quoting 12 C.F.R. § 7.4002(a)).  The Sixth Circuit held the Ohio law significantly interferes with a national bank's power to charge fees because the law "mandates the order in which those banks carry out their daily account-balancing and account-management functions." *Id.* at 284.

*Monroe* does not resolve the present issue of preemption.  The case address any law related to post-repossession collection activities and did not involve the bank's right to collect a debt.  Rather, the law at issue in *Monroe* involved the right of a different creditor—that is, a

creditor other than the bank—to garnish a debtor's bank account. In fact, the court in *Monroe* found "that the NBA does not preempt general state debt collection laws, including those regulating both banks' and others' rights to collect debts." *Id.* at 283.

Defendant also cites *Abel v. Keybank*, 313 F.Supp.2d 720 (N.D. Ohio 2004). In *Abel*, the state law at issue was a provision of RISA that required reading into "each promissory note (arising from a consumer transaction) a requirement that any holder, including a national bank, assume the liability of the seller under certain circumstances." *Id.* at 727. The court found that "this type of state imposed liability significantly interferes with a national bank's ability to negotiate promissory notes and lend money." *Id.* This was because the law "essentially requires national banks to become insurers for sellers vis a vis consumers." *Id.* In other words, the state law would make a bank liable for actions taken by an original lender, actions over which the bank had no input or control. In this case, by contrast, the law does not make the bank an insurer; the law merely holds a bank liable for its own actions.

Buttressing the *Abel* court's conclusion was a preemption clause in the federal regulations—the same regulations at issue in this case. *Id.* at 728. Those regulations expressly preempt state laws concerning "terms of credit." 12 C.F.R. § 7.4008(d)(4). In the eyes of the *Abel* court, the state-law provision was one concerning terms of credit. 313 F. Supp.2d at 727-28. The court did not construe the law—indeed did not even consider it—as one related to the right to collect debt. Accordingly, the court's reasoning and holding does not bear on the preemption question before this Court.

Plaintiffs here do not seek to hold Defendant liable for any actions by Crestmont during the initial processing of the loan, nor are Plaintiffs seeking to impose additional terms of credit

on the contract.  Instead, Plaintiffs are seeking to impose liability on Defendant for the actions

Defendant took during post-repossession debt-collection activities.

In fact, the obstacle preemption argument—that state laws regulating repossession notice

requirements significantly interfere with a bank's lending power and therefore stand as an

obstacle to the federal statutory scheme—was persuasively rejected by the court in *Aguayo*.  653

F.3d at 925.  There the court reasoned that, even if the debt-collection laws prevent a bank from

recovering a deficiency, it cannot be said to affect the bank's *lending* operations.  *Id*. (emphasis

in original).  Such a provision cannot significantly interfere with the bank's lending operations

because the collection laws at issue come into effect only after the consumer has defaulted on the

contract—well after the loan has been made.  *Id.*  Thus "[t]here is no loan at this juncture, but

merely an outstanding debt [the bank] has sought to recover using a remedy provided for under

state law." *Id. See Epps*, 675 F.3d at 326. ("[P]ost default debt collections is distinct from the

creditor's initial determination to extend credit to the debtor.  Moreover, under [the bank's]

theory, *any* state debt collection regulation would burden the exercise of a national bank's

lending power, and all state laws applicable to debt collection would be invalid as applied to

such banks.) (emphasis in original).

Moreover, a bank cannot, on the one hand, avail itself of the right to repossess a vehicle

under state law and then, on the other hand, disclaim the applicability of that very law by arguing

it significantly interferes with its ability to engage in the business of banking.  *See Aguayo*, 653

F.3d at 925.  A bank may not use state law as both a sword and a shield.  In any event, whatever

burden the state-law notice requirements can be said to impose on banks is, at worst, *de minimis.*

Accordingly, the Court finds that the NBA and the OCC regulations do not preempt the

RISA or OUCC provisions at issue in this case.

**D. Alternative Argument**

Defendant next argues that, even if federal law does not preempt RISA, RISA does not apply to Defendant because RISA does not regulate transactions between consumers and financial institutions.  It is true that RISA does not apply to transactions between consumers and financial institutions, O.R.C. § 1317.01(P), and there is no question Defendant is a financial institution: "a national bank organized and existing as a national bank association." O.R.C. § 5725.01(A)(1).

However, RISA *does* apply to three-party transactions—transactions in which "a retailer extends credit to a buyer and takes a security interest in the goods being purchased on credit, and subsequently assigns the note and security interest to a financial institution." *Jones v. Cynet, Inc.*,  Ohio Ct. App. 8th Dist., No. 79769, 2002 WL 1041829 at *3-4 (May 23, 2002) (citing *Howard v. SunStar Acceptance Corp.* (May 8, 2001), Franklin App. No. 00AP-70, unreported, 2001 Ohio App. LEXIS 2039).  Accord *Huntington National Bank v. Elkins*, 539 N.E.2d 1135, 1139 (Ohio App. 3d 1987) ("[W]here the seller itself has financed the sale and then transferred or assigned the installment note and security agreement to a third party, usually a financial institution...., the applicability of RISA has been generally assumed.").

This case involves a three-party transaction.  Crestmont financed the vehicle for Plaintiffs, took a security interest in the vehicle, and then assigned that interest to Defendant. Accordingly, RISA is applicable.

-14-

### IV. Breach of Contract

Defendant argues that Plaintiffs' breach of contract claim should be dismissed because the contract expressly provides for collection fees. (Doc #: 7 at 18). The contract does not expressly provide for collection fees. The contract does, however, expressly provide for "allowable expenses," defined as "expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale and selling it." (*Id.*). The term "collection fees" is found nowhere in the contract. Rather, the term is in Defendant's letter, attached to the Complaint, explaining the calculation of the deficiency amount. (Doc #: 1-2). Among the other items listed in the letter are locator fees, storage fees, impound fees, auction fees, agent fees, repair fees, and transportation fees.

The term "collection fees" is ambiguous. Without further fact development, there is no way to determine if "collection fees" refer to the expenses that resulted from taking, holding, preparing for sale, or selling the vehicle, or if they refer to something else. Certainly one interpretation—an interpretation favorable to Plaintiffs—is that these fees have nothing to do with repossessing and selling the car and instead have to do with Defendant's efforts to collect on the debt, such as through phone calls, letters, and other communications with Plaintiffs. Indeed, any expense Defendant assumed to "collect" the car—that is, to physically repossess the car—would more appropriately be called "transportation fees," which is a category of expenses listed in Defendant's deficiency letter.

Either way, what is meant by "collection fees" is a question that cannot be resolved at the pleading stage; it can only be resolved after discovery has commenced and the facts have been developed. Accordingly, Defendant's motion to dismiss Plaintiffs' breach of contract claim is

denied.

## V. Unjust Enrichment

In Ohio, recovery is generally not allowed under a claim for unjust enrichment where there is an express contract that covers the same subject. *MMK Group, LLC v. SheShells Co., LLC*, 591 F.Supp.2d 944, 964 (N.D. Ohio 2008). A claim for unjust enrichment may proceed, however, even where there is an express contract, if the party against whom the claim is against acted in bad faith. *See Credit Gen. Ins. Co. v. Marine Midland Bank, N.A.*, C-3-86-561, 1992 WL 1258518 (S.D. Ohio Aug. 24, 1992).  Plaintiffs argue Defendant acted in bad faith by charging fees when it knew or should have known that such fees are explicitly prohibited under the contract terms and under Ohio law.

"Bad faith" is "that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest." *Casserlie v. Shell Oil Co.*, 121 Ohio St.3d 55, 63 (2009) (internal quotation and citation omitted).  The bad-faith exception is limited to bad faith in "inducing the party into entering into the contract, or...in terminating the contract." *Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387(6th Cir. 1975).

There is no dispute that Cresmont, not Defendant, entered into the contract with Plaintiffs.  And, of course, Cresmont is not a party to this action.  There is also no dispute that the contract was terminated because Plaintiffs, not Defendant, defaulted on the contract.  So the bad-faith exception as limited by *Randolph* does not fit the alleged facts of this case. Furthermore, even under the broad definition of bad faith Plaintiffs do not have a valid cause of action, for they do not allege any facts that show, directly or indirectly, Defendant had a

dishonest purpose.  Plaintiffs' conclusory, unsupported claim must be dismissed.

### VI. Conclusion

For the foregoing reasons, the Court hereby **DENIES IN PART** and **GRANTS IN PART** Defendant's motion to dismiss (Doc #: 7) and dismisses Plaintiffs' unjust enrichment claim.

**IT IS SO ORDERED.**

_s/Dan Aaron Polster 10/17/12_

**Dan Aaron Polster**
**United States District Judge**