IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LANEEKA A. WHITE, *et al.* | ) | CASE: 12-CV-00943 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF'S AMENDED** |
| Wells Fargo BANK, N.A. | ) | **UNOPPOSED MOTION FOR** |
| Trading as Wells Fargo Dealer Services | ) | **PRELIMINARY APPROVAL OF** |
| | ) | **SETTLEMENT AGREEMENT** |
| Wells Fargo. | ) | |
| | ) | |

## I.   INTRODUCTION

Plaintiffs Laneeka White and Timothy Reese ("Plaintiffs"), have filed with the

Court a proposed Class Action Settlement Agreement ("Settlement Agreement" or

"Settlement"), to resolve this case. Plaintiffs have also attached hereto as Exhibit 1, a

proposed Order providing for provisional certification of a settlement class, preliminary

approval of the Settlement Agreement, issuance of notice to class members, and

scheduling of a hearing on final approval.

As set forth more fully below, the Settlement as proposed provides for cash

recovery for certain class members whose vehicles Wells Fargo Bank, N.A., Wells Fargo

Dealer Services, a division of Wells Fargo Bank, N.A.,  Wachovia Dealer Services, Inc.,

Wells Fargo Auto Finance, LLC and/or Wells Fargo Auto Finance, Inc. ("Wells Fargo")

repossessed, as well as the permanent abandonment of any and all claims Wells Fargo

may have to the remaining deficiency balances of class members. Upon final approval,

checks will be mailed automatically to identified class members and no claim forms are

required. The value of the benefits provided to the class by this Settlement exceeds $22 million, including a Settlement Fund of $950,000, and more than $21 million in abandoned deficiency balances and not including any value that the elimination of negative credit information would have on each class member.  As will be demonstrated below, the Settlement negotiated by the parties is fair, adequate, and reasonable, and this Court should grant preliminary approval.

II.     **STATEMENT OF THE CASE**

This consumer class action alleges that Wells Fargo failed to provide statutorily mandated disclosures when it repossessed vehicles from Ohio consumers. Specifically, Plaintiffs' First Amended Class Action Complaint [Dkt. # 33] ("Complaint") alleges that Wells Fargo issued notices to consumers following the repossession of their financed automobiles that were substantially and materially defective.  Wells Fargo denies these allegations.

1.  **Legal Background**

In the Complaint, Plaintiffs allege that Wells Fargo's form post-repossession notices misinformed borrowers about important rights and omitted key required disclosures, violating both the Uniform Commercial Code ("UCC"), R.C. §§ 1309.610, 1309.613 and 1309.614 and the Retail Installment Sales Act ("RISA"), R.C. §§ 1317.07, 1317.12 and 1317.16, because it failed to correctly state (a) the minimum price at which the vehicle would be sold and/or (b) the date, time, or location of sale.  In addition, the Complaint alleges that Wells Fargo issued "Deficiency Notices" that stated monies identified as "collection fees" would be deducted from the proceeds of sale that were not in fact collection fees.  Finally, the Complaint alleges that Wells Fargo collected or

2

attempted to collect deficiencies from borrowers which were precluded by § 1317.12 and/or § 1317.16.

2.  **Statement Of The Claims And Defenses**

Plaintiffs' claims are premised on the standard forms Wells Fargo used as post-repossession notices in the repossession and sales of the vehicles between March 2, 2006 and November 1, 2013, and the statutory requirements which they allege that Wells Fargo violated.  Under both the UCC and RISA, a post repossession notice must state the time and place of a public sale. R.C. § 1309.613(A)(1)(e), R.C. § 1317.16(B).  RISA also requires that the notice state the minimum price at which the vehicle will be sold. R.C. § 1317.16(B).  Failure to comply with the UCC notice provisions gives rise to statutory damages.  R.C. § 1309.625 (holder's failure to comply with R.C. § 1309.614 makes it liable for statutory damages equal to the credit service charges owed under the contract plus ten percent of the loan amount).  Plaintiffs assert that under RISA Wells Fargo's failure to comply with the notice requirements of R.C. §§ 1317.12 and 1317.16 deprives it of any right to obtain a deficiency.

In addition to statutory damages, Plaintiffs' Complaint seeks a declaration that Wells Fargo's acts and practices, namely, its alleged violations of R.C. §§ 1317.16, and 1309.613 and 614, are unlawful.  The Complaint also seeks an injunction to prohibit Wells Fargo from continuing to engage in these practices and requiring that Wells Fargo remove adverse credit information previously reported to credit reporting organizations, as well attorneys' fees, costs and expenses.

Wells Fargo denies that the notices were defective, and among other defenses, challenged the appropriateness of this case for class treatment.

3

### III.     THE TERMS OF THE SETTLEMENT

The parties' Settlement Agreement is attached as Exhibit 2 hereto.  The material terms include the following:

**A.    Class Definition.**  "Settlement Class" means all persons who executed a retail installment contract in Ohio where:

a.  Wells Fargo Bank, N.A., Wells Fargo Auto Finance, LLC, Wells Fargo Auto Finance, Inc., Wells Fargo Dealer Services and/or Wachovia Dealer Services was the party with the rights to enforce a retail installment contract executed by an Ohio resident;

b.  The retail installment contract was secured by a lien on a motor vehicle;

c.  Wells Fargo repossessed the vehicle in the State of Ohio between March 2, 2006 through November 1, 2013 due to a default on the underlying retail installment contract, and sold the vehicle for purposes of satisfying the default or gave notice that it intended to so do;

and who:

a.  were issued a notice of sale by Wells Fargo which failed to provide the correct date, time and location for the auction of the vehicle;

b.  were issued a notice of sale by Wells Fargo where the minimum bid price for the vehicle at public auction was either not included in the notice or the vehicle was subsequently sold at public auction for less than the minimum bid amount disclosed in the notice of sale; or

c.  were issued a notice of deficiency which deducted monies as "collection fees" that were not in fact collection fees.

and who:

a.  Have not had judgment issued or entered against them and in favor of Wells Fargo relating to the account;

b.  None of the obligors on the account have filed for relief or had an involuntary petition for relief filed against them pursuant to the United States Bankruptcy Code; or

c.  Are not now and have never been executives of the Wells Fargo and the spouses, parents, siblings and children of all such individuals.

**B.  Economic Relief for Class Members**

On the Distribution Date, as defined by the Settlement Agreement, Wells Fargo shall provide the following financial relief to Settlement Class Members:

1.  Wells Fargo will mail each Settlement Cash Refund Eligible Class Member (as defined in the Settlement Agreement) a check in the amount of the Settlement Cash Refund Eligible Class Member's pro rata share of the Settlement Fund, after the deduction of the costs of notice and administration, attorneys' fees and incentive payments. The pro rata share shall be equal to the ratio of the aggregate Deficiency Payments the class member made to all Deficiency Payments made by all Settlement Cash Refund Eligible Class Members;

2.  Wells Fargo shall permanently abandon any claim it holds to the Deficiency Balance allegedly owed by any Settlement Class Member.  Plaintiffs assert that Wells Fargo's agreement and decision to forgo collection of the alleged deficiency balances of Settlement Class Members is based upon the operation of state law.

[Settlement Agreement, §5(A)]

The value of the the claims that Wells Fargo is abandoning is in excess of $21 million dollars with balances being waived averaging $5,741.62 and ranging from $1.58 to $30,298.06.

**C.  Relief not Specifically Monatary**

In addition to the monetary relief, Wells Fargo has agree to engage in remediation of the Class Member's credit as it relates to these loans.  Wells Fargo will report to the three major credit reporting agencies that these loans are either paid in full or request that the trade line be removed from the Class Members' credit reports in its entirty.  Such action will result in an improvement to each Class Members' credit.  This could make it easier for the Class Members to obtain credit in the future.

**D.   Notice And Administration**

Subject to this Court's preliminary approval of the Settlement, the Settlement Administrator, A.B. Data, Ltd., shall mail notice to identified members of the Settlement Class in accordance with the schedule contained in the Preliminary Approval Order, and the terms of the Settlement Agreement. [Settlement Agreement, ¶ 9(D)]. Class Notice will be sent by first class United States mail. Wells Fargo will advance all of the notice and administrave expense, which shall be deducted from the attorneys' fee portion of the Settlement Fund by the Settlement Administrator [Settlement Agreement, §5(D-F)]. The cash payments and distributions required under this Agreement shall be paid from remaining amount in the Settlement Fund. A proposed form of Notice is attached to the Settlement Agreement as Exhibit B.

**E.   Incentive Payment**

Subject to approval of this Court, Wells Fargo will pay an incentive award to the Class Representatives, Laneeka White and Timothy Reese, in the amount of $2,500.00 each, payable from the Settlement Fund, for serving in the capacity of class representatives. [Settlement Agreement, §5(H)(2)]

**F.   Attorney's Fees and Expenses**

The Settlement Agreement provides that Class Counsel may seek from the Settlement Fund $475,000 in attorneys' fees, costs for administration of the Settlement and expenses. [Settlement Agreement, §5(H)(1)]

Class Counsel intends to apply for such an award, and Wells Fargo has agreed not object to this request. The Settlement Administrator will pay such amount from the Settlement Fund if awarded by the Court, subject to the terms of this Settlement. The

parties did not address the issue of attorneys' fees until after agreement was reached on all material terms of this Settlement.

The attorney fees negotiated are consistent with numerous other class settlements relating to repossession in Ohio and in this case represent (even prior to deducting the costs of notice and administration) just over 2% of the total monetary benefit provided to the class.

### G. **Identification of Class Members.**

Wells Fargo has represented that, to the best of its knowledge based on researching customer accounts, the Settlement Class encompasses approximately 4,250 accounts and the total Deficiency Balances allegedly currently owed by Settlement Class Members is approximately 21 million dollars. A list of the Settlement Class Members is to be sent by Wells Fargo's Counsel to the Settlement Administrator and Class Counsel within 30 days of the entry of Preliminary Approval.

### H. **Exclusions Objections and Final Approval**

Each Class Member identified from Wells Fargo's records will receive a notice which includes a description of his or her right to elect not to be part of the Settlement Class and not to be bound by the Settlement, if, within such time as is ordered by the Court and is contained in the notice, the affected person mails an appropriate opt-out notice. At least five (5) days prior to the Final Approval hearing, Class Counsel will file with the Court, and serve on Wells Fargo's counsel, a list of all persons who have excluded themselves from the Settlement Class in a timely manner. [Settlement Agreement, §§5(F)]

7

A proposed form of Final Approval Order is attached to the Settlement Agreement as Exhibit C.

**I.** ___*Cy Pres* **Award**___

The Parties have agreed that a *cy pres* fund will be created to address any residue of the Settlement Fund remaining for any reason, including checks that are not negotiated or are returned and remain undeliverable after 90 days following the mailing of the checks to Settlement Cash Refund Eligible Class Members pursuant to this Agreement. The *cy pres* fund shall be donated, with the approval of the Court, to the Ohio Legal Aid Foundation and the Cleveland Food Bank as a pass through to the Solon Moble Food Pantry ("Charties").  The Settlement Administrator, 110 days after the checks are mailed to the Settlement Cash Refund Eligible Class Members under, shall forward funds payable to the Charities to the escrow account of Class Counsel.  Class Counsel shall remit the funds to the Charities and provide proof of such payment to Wells Fargo's counsel. [Settlement Agreement, §§5(I)]

**IV. THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED**

This Settlement presented to the Court for preliminary approval represents a fair and reasonable resolution of this dispute. It will provide substantial financial relief to Class Members in the form of cash payments and the waiver of deficiency balances, and will relieve Wells Fargo of the burden of litigation.  Plaintiffs request, with the assent of Wells Fargo, that the Court enter the proposed Preliminary Approval Order certifying the Settlement Class, preliminarily approving the Settlement, providing for notice to the class, and scheduling the final approval hearing.  The proposed Preliminary Approval Order is attached to the Settlement Agreement as Exhibit D.  The Proposed Order also

sets suggested deadlines for opt outs and objections.

### A.  The Standard For Preliminary Approval Of Settlement Agreements

The settlement of a class action requires court approval in order to protect against any fraud or collusion and to ensure fairness to absent class members. *Beder v. Cleveland Browns, Inc.*, 114 Ohio Misc. 2d 26 (2001).  There is an initial presumption of fairness if class counsel recommends the settlement after engaging in arm's length negotiations. 4 H. Newberg, A. Conte, *Newberg on Class Actions,* §11.42 (4th ed. 2002).

At the preliminary approval stage, the parties present the settlement to the trial court for its review and a preliminary determination that the agreement is sufficiently fair and reasonable to merit class notice and further proceedings.  *The Manual For Complex Litigation* (§ 21.632) sets forth the procedures for preliminary approval of settlements:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

If the trial court makes such a determination, it orders that class notice be given in an appropriate manner, establishes a schedule and procedures for requests for exclusion or the submission of objections, and sets the matter for a final approval hearing. *See, Newberg, supra*, §§ 11.24-25.  Consideration of the relevant factors indicates that the proposed Settlement Agreement under review here is well within the range of possible approval and supports authorizing notice of the Settlement to the class members.

There is a strong judicial policy favoring the settlement of complex class actions. *Lonardo v. Travelers Indem. Co.* 706 F. Supp.2d 766, (N.D. Ohio March 31, 2010);

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 246 (S.D. Ohio 1991) ("The law generally favors and encourages the settlement of a class action."). As such, there is a presumption of fairness when: (1) the settlement is reached through arm's length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. Newberg, *supra*, at § 11.41, pp. 11-91.

In this case, the proposed Settlement Agreement warrants the Court's preliminary approval. The Settlement Agreement is a fair, reasonable and adequate resolution of the claims asserted. The Settlement Agreement also provides significant monetary relief to the identified Settlement Class Members, namely the abandonment of deficiency balances, which amount to more than $21 million for the class period, as well as cash payments to Class Members from the Settlement Fund [Settlement Agreement, §5(B)(1),(2)].

The Settlement Agreement also ensures that the credit histories of identified Class Members are cleared. [Settlement Agreement, §5(B)(2)].

The Settlement Agreement further provides that Class Counsel may apply for attorneys' fees, costs and expenses not to exceed $475,000 subject to this Court's approval of such award. [Settlement Agreement, §5(H)]. This sum represents just over 2% of the total benefit the Settlement provides to Class Members.

Thus, the Settlement Agreement provides Class Members meaningful relief, and in addition, is structured to provide Class Members the best notice possible so that they can make an informed decision about whether to participate. Settlement Class Members will be entitled to receive all of the relief provided in the Settlement Agreement without

10

having to submit a claim form.

All of the other relevant factors also warrant the Court's approval. The Settlement Agreement was negotiated at arm's length by class counsel with substantial experience representing consumers in class action and unfair business practices litigation. *See* Declaration of Ronald Frederick ("Frederick Decl."), attached as Exhibit 3. Class Counsel conducted sufficient investigation to evaluate the merits of the case, and the value of potential recovery. Frederick Decl., ¶ 6. The Settlement Agreement was reached after hard fought negotiations, including a mediation session conducted by an experienced mediator from JAMS in Chicago and many informal settlement discussions between the parties. Frederick Decl., ¶ 7. The result is a fair and reasonable settlement that achieves full monetary relief, and that will provide substantial benefits directly to class members. Frederick Decl., ¶ 8.

## V.        THE SETTLEMENT CLASS IS APPROPRIATE FOR CERTIFICATION

Plaintiffs request, with Wells Fargo's assent, that the Court provisionally certify a proposed Settlement Class for settlement purposes only. Such provisional class certification is appropriate at the preliminary approval stage where, as here, the proposed Settlement Class as it is defined in the parties' Settlement Agreement has not previously been certified by the Court and the requirements for certification are met. *Newberg, supra*, at § 11.22. The additional rulings sought on this motion — approving the form, content and distribution of Class Notice, and scheduling a formal fairness hearing — facilitate the settlement approval process, and are also typically made at the preliminary approval stage. *Newberg, supra*, at § 11.26.

The purpose of provisional class certification is to facilitate distribution of notice

of the terms of the proposed Settlement and the date and time of the final approval hearing to all Class Members.  *See Manual,* §§ 21.632, 21.633.  Neither formal notice nor a hearing is required for the Court to grant provisional class certification; instead, the Court may grant such relief upon an informal application by the settling parties and may conduct any necessary hearing in Court or in chambers, at the Court's discretion. *Manual*, § 21.632.

Rule 23(a) provides that a party seeking class certification must establish: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately represent the interests of the class. F.R. Civ. P. 23(a).  "In order to obtain class certification, [a] plaintiff must first satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation."  *Coleman v. GMAC*, 296 F.3d 443, 446 (6th Cir. 2002).  In addition, the class representative must satisfy one of the requirements of Rule 23(b): that (1) the prosecution of separate actions would create a risk of inconsistent judgments establishing incompatible standards of conduct for the party opposing the class or impairing the ability of other class members to protect their interests; or (2) the party opposing the class has acted on grounds generally applicable to the class; or (3) questions of law and fact predominate over individual questions and that a class action is superior to other available methods for the fair and efficient adjudication of the matter. F.R. Civ. P. 23(b)(1)-(3).

    A.  **The Proposed Class Meets the Requirements of Rule 23(a)**

    **1.**  *Numerosity* The class includes 4,250 accounts, well above the number

required to establish that joinder is impracticable.  "[T]here is no strict numerical test for determining impracticability of joinder."  *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005), (*quoting Am. Med. Sys., Inc.,* 75 F.3d at 1069) (internal quotation marks omitted); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 105 F.R.D. 506 (S.D. Ohio 1985) (as few as 23 class members may be sufficient); *see also Warner v. Waste Management, Inc*., 36 Ohio St. 3d 91, 97 (1988) (noting that classes with as few as 40 members satisfy the numerosity requirement).

　　　　**2.  *Commonality***  There are questions of law or fact common to the proposed class. Rule 23(a)(2).  Commonality is satisfied if there is a single issue common to all class members; "every question of law or fact need not be common to each class member."  *Ames v. Robert Bosch Corp*., 2009 WL 803587 (N.D. Ohio March 24, 2009), *citing, Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56- 57 (3rd Cir. 1994); *Moore v. Rohm & Haas Co., 43 Employee Benefits Cas.* 1337, 1342 (N.D. Ohio Nov.19, 2007); *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996). ("[t]he commonality test, is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class.").  *See also Prater v. Ohio Educ. Ass'n*., No. C2 04 1077, 2008 WL 2566364, at *3 (S.D. Ohio June 26, 2008) (finding that even a single common question of law or fact will satisfy the commonality requirement).  The claims of the proposed Settlement Class all arise out of the same common nucleus of facts, and raise the exact same legal issues.  All Settlement Class Members had their cars repossessed by Wells Fargo and received the same post-repossession notices.  The Settlement Class presents no disparate questions of law or fact that would affect the claims of class members.  The Settlement Agreement provides for uniform treatment of

class members' claims, and class membership can be determined by objective criteria. As class certification is sought for settlement purposes only, no defenses based on individualized issues of law or fact exist.  Under these circumstances, the commonality requirement is satisfied.

      **3.**  ***Typicality***  The proposed class representative's claims are typical of those of the class. Rule 23(a)(3).  A class representative must have claims that are typical of those of other members of the proposed class.  *Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir. 1976).  Typicality is met where the class representative's interests are not antagonistic to those of the class, there is a common question of fact or law, and the class representative is a member of the class.  *Id*. at 525.  Plaintiffs meet this requirement. They are members of the proposed Settlement Class, and do not have any express conflict with the class as a whole.  They were subject to the same practices as all class members: their car was repossessed and they were issued post-repossession notices that contained the alleged deficiencies identified in the Complaint.  Their claims are typical, and they are able to represent the interests of the class.

      **4.**  ***Adequacy Of Representation***  Under Rule 23, adequacy of representation has two elements: adequacy of the named representative and adequacy of counsel.  *Senter*, 532 F.2d at 525 ("1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.")  In determining adequacy of the class representative, the relevant consideration is "whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent."  *Cross v. National Trust Life Ins. Co*., 553 F.2d 1026, 1035 (6th Cir. 1977),

*citing Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968).  For the same

reasons that their claims are typical, *supra*, Plaintiffs meet this requirement.  Concerning

the adequacy of counsel, Class Counsel has substantial experience representing

consumers in complex class actions, and is qualified to conduct the litigation on behalf of

the class.  Frederick Decl., ¶ 5.  In addition, throughout this litigation, Plaintiffs and their

counsel have demonstrated their commitment to vigorously prosecuting the case on

behalf of the class.  Here, the parties reached this settlement after prolonged negotiations

conducted under the auspices of an experienced mediator and by direct negotiations

between the parties.  Frederick Decl., ¶ 7.  The adequacy requirement is met here.

    **B.  The Proposed Class Meets the Requirements of Rule 23(b)(3)**

       In addition to satisfying the prerequisites of Rule 23(a), the proposed class

satisfies Rule 23(b)(3), which requires that the court find that "questions of law or fact

common to the members of the class predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for the

fair and efficient adjudication of the controversy."  Rule 23(b)(3).  The Rule lists several

factors that are relevant to this determination, which include: a) the interest of class

members in controlling the prosecution of separate actions; b) the extent and nature of

existing litigation concerning the controversy; c) the desirability of concentrating the

litigation of the claims in a particular forum; and d) the difficulties likely to be

encountered in the management of the class action.

       This action satisfies both the standards and purpose of the Rule.  As the

Settlement Class is defined to include only those who were sent a post-repossession

notice by Wells Fargo or its agents, there are no individual questions governing

membership in the proposed Settlement Class. Certification of the Settlement Class will also eliminate the burden to the parties and class members of litigating disputed claims and will also conserve judicial resources.  Therefore, the proposed Settlement Class is the most efficient means of resolving this litigation.

**VI.      CONCLUSION**

Without the class action device, this matter could not be litigated fairly and efficiently given the number of consumer accounts involved.  A class action settlement is the best method for class members to obtain a remedy for the conduct that this case challenges.  For the foregoing reasons, Plaintiffs respectfully request that this Court schedule a hearing to approve the Settlement on a preliminary basis and certify the proposed class.  To facilitate the class notice and approval process, the parties propose the following schedule:

Class Notice Mailed By: February 28, 2014
Class Publication Notice published by: March 28, 2014
Requests for Exclusion Mailed by: April 29, 2014
Filing and Service of Objections: April 29, 2014
Final Approval Submissions: May 26, 2014
Final Approval Hearing: June 9, 2014, 12:30 PM

Respectfully submitted,

/s/ Ronald I. Frederick
Ronald I. Frederick, Esq. (#0063609)
Frederick & Berler, LLC
1370 Ontario Street, Suite 1240
Cleveland, OH 44113
(216) 502-1055
(216) 566-9400 Fax
ronf@clevelandconsumerlaw.com

*Attorney for Plaintiffs*

16

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2014 a copy of the foregoing

*Plaintiff's Unopposed Motion for Preliminary Approval of Settlement Agreement* was

filed electronically.  Notice of this filing will be sent to all parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's

system.

> /s/ Ronald I. Frederick
> RONALD I. FREDERICK 0063609
> *Attorney for Plaintiffs*