IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LANEEKA A. WHITE, *et al.* | ) | CASE: 12-CV-00943 |
| | ) | |
| Plaintiffs, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| Wells Fargo BANK, N.A. | ) | **UNOPPOSED MOTION FOR FINAL** |
| Trading as Wells Fargo Dealer Services | ) | **APPROVAL OF SETTLEMENT AGREEMENT,** |
| | ) | **ATTORNEYS' FEES AND CLASS** |
| Defendant. | ) | **REPRESENTATIVE INCENTIVE PAYMENT** |
| | ) | |

## I.    Introduction

The parties have negotiated and this Court has preliminarily approved a settlement worth in excess of 22 million that will resolve this consumer class action. The proposed settlement, preliminarily approved by the Court by Order dated January 22, 2014, provides cash payments to Settlement Class Members whose vehicles were repossessed by Wells Fargo Bank, N.A., Wells Fargo Dealer Services, a division of Wells Fargo Bank, N.A., Wachovia Dealer Services, Inc., Wells Fargo Auto Finance, LLC and/or Wells Fargo Auto Finance, Inc. ("Wells Fargo"). It further provides complete debt relief for all Settlement Class Members with outstanding deficiency balances, which total more than $21 million.  These benefits are directly responsive to the relief that Plaintiffs Laneeka White and Timothy Reese ("Plaintiffs") sought in their complaint, which challenges Wells Fargo's issuance of alleged defective post-repossession notices.

This Settlement Agreement is now subject to final approval by this Court. In accordance with the Court's Order on Preliminary Approval ("Order"),  a copy of which is attached as

Exhibit A, notice was published in ten newspapers of general circulation in major Ohio cities and was also sent by first class United States mail to all known members of the Settlement Class, advising them of the final approval hearing and how their rights may be affected by the proposed settlement. *See* Notice of Class Action Settlement, attached as Exhibit B. Of approximately 6,121 noticed Settlement Class Members including co-borrowers, *not one* objected to the settlement or opted out. A copy of the Settlement Administrator's Affidavit, which was filed as Dkt. No. 43, is attached as Exhibit C.

The exceptional benefits provided for under this settlement and its 100% acceptance rate by the class demonstrate that it is fair, adequate, and reasonable and worthy of final approval. For these reasons, and for the reasons detailed below, the Court should approve the proposed settlement in all respects, including the certification of the proposed Settlement Class. A proposed form of Final Approval Order is attached as Exhibit D.

## II. Summary Of The Case

This consumer class action alleges that Wells Fargo failed to provide statutorily mandated disclosures when it repossessed vehicles from Ohio consumers. Specifically, Plaintiffs' First Amended Class Action Complaint [Dkt. # 33] ("Complaint") alleges that Wells Fargo issued notices to consumers following the repossession of their financed automobiles that were substantially and materially defective. Wells Fargo denies these allegations.

### A. Legal Background

In the Complaint, Plaintiffs allege that Wells Fargo's form post-repossession notices misinformed borrowers about important rights and omitted key required disclosures, violating both the Uniform Commercial Code ("UCC"), R.C. §§ 1309.610, 1309.613 and 1309.614 and the Retail Installment Sales Act ("RISA"), R.C. §§ 1317.07, 1317.12 and 1317.16, because it

2

failed to correctly state (a) the minimum price at which the vehicle would be sold and/or (b) the date, time, or location of sale.  In addition, the Complaint alleges that Wells Fargo issued "Deficiency Notices" that stated monies identified as "collection fees" would be deducted from the proceeds of sale that were not in fact collection fees.  Finally, the Complaint alleges that Wells Fargo collected or attempted to collect deficiencies from borrowers which were precluded by § 1317.12 and/or § 1317.16.

B.  **Statement Of The Claims And Defenses**

Plaintiffs' claims are premised on the standard forms Wells Fargo used as post-repossession notices in the repossession and sales of the vehicles between March 2, 2006 and November 1, 2013, and the statutory requirements which they allege that Wells Fargo violated. Under both the UCC and RISA, a post repossession notice must state the time and place of a public sale. R.C. § 1309.613(A)(1)(e), R.C. § 1317.16(B).  RISA also requires that the notice state the minimum price at which the vehicle will be sold. R.C. § 1317.16(B).  Failure to comply with the UCC notice provisions gives rise to statutory damages.  R.C. § 1309.625 (holder's failure to comply with R.C. § 1309.614 makes it liable for statutory damages equal to the credit service charges owed under the contract plus ten percent of the loan amount).  Plaintiffs assert that under RISA, Wells Fargo's failure to comply with the notice requirements of R.C. §§ 1317.12 and 1317.16 deprives it of any right to obtain a deficiency.

In addition to statutory damages, Plaintiffs' Complaint seeks a declaration that Wells Fargo's acts and practices, namely, its alleged violations of R.C. §§ 1317.16, and 1309.613 and 614, are unlawful. The Complaint also seeks an injunction to prohibit Wells Fargo from continuing to engage in these practices and requiring that Wells Fargo remove adverse credit

3

information previously reported to credit reporting organizations, as well attorneys' fees, costs and expenses.

Wells Fargo denies that the notices were defective, and among other defenses, challenged the appropriateness of this case for class treatment.

After filing this action, Class Counsel conducted substantial investigation and informal discovery, after which the parties agreed to attempt mediation. The parties engaged in a full-day mediation sessions with Retired Judge Richard Neville. This day of mediation moved the parties but did not resolve the case. Thereafter, the parties engaged in extensive negotiations which eventually led to the final terms of the proposed Settlement Agreement before this Court.

On January 22, 2014, this Court entered an Order preliminarily approving the Settlement Agreement and conditionally certifying a Settlement Class.

### III.     Terms Of The Settlement

The material terms of the parties' Settlement Agreement include the following:

**A.     Class Definition.**  "Settlement Class" means all persons who executed a retail installment contract in Ohio where:

    a.  Wells Fargo Bank, N.A., Wells Fargo Auto Finance, LLC, Wells Fargo Auto Finance, Inc., Wells Fargo Dealer Services and/or Wachovia Dealer Services was the party with the rights to enforce a retail installment contract executed by an Ohio resident;

    b.  The retail installment contract was secured by a lien on a motor vehicle;

    c.  Wells Fargo repossessed the vehicle in the State of Ohio between March 2, 2006 through November 1, 2013 due to a default on the underlying retail installment contract, and sold the vehicle for purposes of satisfying the default or gave notice that it intended to so do;

and who:

    a.  were issued a notice of sale by Wells Fargo which failed to provide the correct date, time and location for the auction of the vehicle;

4

     b.   were issued a notice of sale by Wells Fargo where the minimum bid price for the vehicle at public auction was either not included in the notice or the vehicle was subsequently sold at public auction for less than the minimum bid amount disclosed in the notice of sale; or

     c.   were issued a notice of deficiency which deducted monies as "collection fees" that were not in fact collection fees.

and who:

     a.   Have not had judgment issued or entered against them and in favor of Wells Fargo relating to the account;

     b.   None of the obligors on the account have filed for relief or had an involuntary petition for relief filed against them pursuant to the United States Bankruptcy Code; or

     c.   Are not now and have never been executives of the Wells Fargo and the spouses, parents, siblings and children of all such individuals.

### B. Economic Relief for Class Members

On the Distribution Date, as defined by the Settlement Agreement, Wells Fargo shall provide the following financial relief to Settlement Class Members:

**1.** Using monies provided by Wells Fargo, the Settlement Administrator will mail each Settlement Cash Refund Eligible Class Member (as defined in the Settlement Agreement) a check in the amount of the Settlement Cash Refund Eligible Class Member's pro rata share of the Settlement Fund, after the deduction of the costs of notice and administration, attorneys' fees and incentive payments. The pro rata share shall be equal to the ratio of the aggregate Deficiency Payments the class member made to all Deficiency Payments made by all Settlement Cash Refund Eligible Class Members;

**2.** Wells Fargo shall permanently abandon any claim it holds to the Deficiency Balance allegedly owed by any Settlement Class Member. Plaintiffs assert that Wells Fargo's agreement and decision to forgo collection of the alleged deficiency balances of Settlement Class Members is based upon the operation of state law.

[Settlement Agreement, §5(A)]

The value of the claims that Wells Fargo is abandoning is in excess of $21 million dollars with balances being waived averaging $5,741.62 and ranging from $1.58 to $30,298.06.

5

**C.  Relief not Specifically Monetary**

In addition to the monetary relief, Wells Fargo has agreed to engage in remediation of the Class Member's credit as it relates to these loans. Wells Fargo will report to the three major credit reporting agencies that these loans are either paid in full or request that the trade line be removed from the Class Members' credit reports in its entirety. Such action will result in an improvement to each Class Members' credit. This could make it easier for the Class Members to obtain credit in the future.

**D.  *Notice and Administration*.**

As required by the Settlement, the Settlement Administrator, A.B. Data, Ltd. mailed notice to identified members of the Settlement Class in accordance with the schedule contained in the Preliminary Approval Order, and the terms of the Settlement Agreement. [Settlement Agreement, ¶ 9(D)]. Class Notice was sent by first class United States mail to all identified members of the Settlement class in accordance with the schedule contained in the Preliminary Approval Order, and the terms of the Settlement Agreement. [Settlement Agreement, ¶ 9 (D)].  In addition, the Settlement Administrator caused the publication notice to be placed in ten newspapers of general circulation around the State of Ohio. Costs of providing notice to the Class Members, administering the Settlement Agreement and making the cash payments and distributions required under the Agreement were advanced by Wells Fargo and are to be deducted from the attorneys' fee portion of the Settlement Fund by the Settlement Administrator[Settlement Agreement, ¶ 5 (D–F)]. The cash payments and distributions required under this

6

agreement shall be paid from the remaining amount in the Settlement Fund. (The Affidavit of the Settlement Administrator is attached as Exhibit C).

*Incentive Payment*. Subject to approval of this Court, using monies provided byWells Fargo, the Settlement Administrator will pay an incentive award to the Class Representatives, Laneeka White and Timothy Reese, in the amount of $2,500.00 each, payable from the Settlement Fund, for serving in the capacity of class representatives. [Settlement Agreement, §5(H)(2)]

*Attorneys' Fees and Costs*. The Settlement Agreement provides that Class Counsel may seek from the Settlement Fund $475,000 in attorneys' fees, costs for administration of the Settlement and expenses. [Settlement Agreement, §5(H)(1)]. Class Counsel has applied for such an award, and Wells Fargo has agreed not object to this request. The Settlement Administrator will pay such amount from the Settlement Fund if awarded by the Court, subject to the terms of this Settlement. The parties did not address the issue of attorneys' fees until after agreement was reached on all material terms of this Settlement.

The attorney fees negotiated are consistent with numerous other class settlements relating to repossession in Ohio and in this case represent (even prior to deducting the costs of notice and administration) just over 2% of the total monetary benefit provided to the class.

*Identification of Class Members*. Wells Fargo represented that, to the best of its knowledge based on researching customer accounts, the Settlement Class encompasses approximately 5,253 accounts and the total Deficiency Balances allegedly currently owed by Settlement Class Members is approximately 21 million dollars. A list of the Settlement Class Members was sent by Wells Fargo's Counsel to the Settlement Administrator and Class Counsel within 30 days of the entry of Preliminary Approval.

7

_Exclusions, Objections, and Final Approval_.  Each Class Member identified from Wells Fargo's records received a notice which included a description of his or her right to elect not to be part of the Settlement Class and not to be bound by the Settlement, if, within such time as was ordered by the Court and contained in the notice, the affected person sent an appropriate opt-out notice. Class Counsel is obliged to file with the Court, and serve on Wells Fargo's counsel, a list of all persons who have excluded themselves from the Settlement Class in a timely manner. However, such a fling is not anticipated since no person excluded themself from the settlement.

_Cy Pres Award_. Subject to the Court's approval, that a _cy pres_ fund will be created to address any residue of the Settlement Fund remaining for any reason, including checks that are not negotiated or are returned and remain undeliverable after 90 days following the mailing of the checks to Settlement Cash Refund Eligible Class Members pursuant to this Agreement.  The _cy pres_ fund shall be donated, with the approval of the Court, to the Ohio Legal Aid Foundation and the Cleveland Food Bank as a pass through to the Solon Mobile Food Pantry ("Charties"). The Settlement Administrator, 110 days after the checks are mailed to the Settlement Cash Refund Eligible Class Members under, shall forward funds payable to the Charities to the escrow account of Class Counsel. Class Counsel shall remit the funds to the Charities and provide proof of such payment to Wells Fargo's counsel. [Settlement Agreement, §§5(I)]

## IV.    Standard Of Review Of Class Action Settlements

Ohio courts, both federal and state, consistently favor settlement of disputed claims. _Franks v. Kroger Co_., 649 F.2d 1216, 1224 (6th Cir. 1981) _vacated on other grounds and modified_, 670 F.2d 71 (6th Cir. 1982) (law generally favors and encourages the settlement of class actions); _Sutherland, et al. v. ITT Residential Capital Corporation, et al.,_ 702 N.E.2d 436, 443 (Ohio Ct. App. 1997). Compromise is particularly appropriate in class actions. _Franks_, 649 F.2d at 1224;

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991); *In re Dun & Bradstreet Credit Service Consumer Litigation*, 130 F.R.D. 366, 371 (S.D. Ohio 1990). *See generally* 4 H. Newberg, et al., *Newberg on Class Actions* §11.41 (4th ed. 2002).

In reviewing a proposed settlement, courts should not substitute their own judgment for that of the *parties* who negotiated the settlement.  *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation,* 2001 WL 1842315, at *13 (N.D. Ohio 2001) (citations omitted); *In re Inter-Op Hip Prosthesis Liability Litigation*, 204 F.R.D. 330, 350 (N.D. Ohio 2001); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2nd Cir. 1974).

Instead, when deciding whether to approve the proposed settlement, the Court must determine whether the proposal is fair, adequate, and reasonable. *See United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). "[T]here is a strong initial presumption that the compromise is fair and reasonable." *Bronson v. Board of Educ.,* 604 F. Supp. 68, 71-72 (S.D. Ohio 1984) (once preliminary approval is entered the settlement is "presumptively reasonable"); *Katz v. E.L.I. Computer Systems, Inc.*, [1970-71 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 92,994 at 90,676 (S.D.N.Y. 1971).

Accordingly, courts exercise restraint in examining a proposed settlement and recognize that "[s]ettlements, by definition, are compromises which need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits." *In re Saxon Securities Litigation,* Fed. Sec. L. Rep. P.  92,414, 92,525 (S.D.N.Y. 1985), *quoting Alliance to End Repression v. City of Chicago*, 561 F. Supp. 537, 548 (N.D. Ill. 1982).

Courts presume a settlement is fair if it has been negotiated at arm's length by experienced counsel. *In re Inter-Op Hip, at* 351, *citing Duhaime v. John Hancock Mut. Life*

*Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997); *Granada Investments, Inc. v. DWG Corp.*, 823

F. Supp. 448, 454 (N.D. Ohio 1993); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176

F.R.D. 158, 184 (E.D.Pa.1997) ("[s]ignificant weight should be attributed 'to the belief of

experienced counsel that settlement is in the best interest of the class'") (internal citations

omitted). .

### V.        The Proposed Settlement Is Fair, Adequate And Reasonable

In determining whether a proposed settlement is fair, adequate and reasonable, this Court

should consider the following seven factors:

> (1)      the likelihood of success or recovery;
>
> (2)      the amount and nature of discovery or evidence;
>
> (3)      the settlement terms and conditions;
>
> (4)      the recommendation and experience of trial counsel;
>
> (5)      the expense and duration of future litigation;
>
> (6)      the number of objections to the Settlement Agreement and the nature of the objections; and
>
> (7)      the presence of good faith and the absence of collusion among the parties and attorneys.

*Mayborg v. City of St. Bernard*, No. 1:04-CV-00249, 2007 WL 3047235, at *3 (S.D. Ohio, Oct.

18, 2007); *see also Toledo Fair Housing Ctr. v. Nationwide Mut. Ins. Co.*, 94 Ohio Misc. 2d 86,

188.

Application of these factors shows that the proposed settlement is not only fair, adequate,

reasonable and in the best interests of the Settlement Class, it represents an excellent result for

the Settlement Class.

10

### A.    Even With A Strong Factual And Legal Case, Settlement Class Members Face A Substantial Risk In Establishing Liability And Damages

Although Plaintiffs believe that their claims against Wells Fargo are meritorious, they recognize that ultimate success on the merits is by no means assured. During the course of this litigation, Wells Fargo has made clear that if this matter were further contested, it would vigorously challenge the merits of Plaintiffs' claims. Wells Fargo has contended and continues to contend that it has meritorious defenses to the asserted claims, that its notices complied with applicable law, and that this matter is not appropriate for class treatment.

### B.    The Parties Have Negotiated The Settlement From A Well-Informed Perspective

Through this litigation and the mediation session as well as the ensuing further negotiations, the parties have developed substantial appreciation for the merits of their respective positions before reaching an agreement as to settlement. Declaration of Ronald Frederick In Support Of Final Approval Of Settlement Agreement, Attorneys' Fees and Class Representative Incentive Payment ("Frederick  Decl., ") ¶ 13, attached as Exhibit E. The parties have conducted formal and informal discovery, and in conjunction with the mediation in this case, the parties exchanged information and documents relevant to settlement, including information about notices used and deficiencies outstanding.

Through this process Plaintiffs acquired sufficient knowledge and information to develop a full understanding of the merits of the case, and assess a potential settlement. Frederick Decl., ¶¶ 13, 15. The case was successfully concluded with hard work by the parties after a mediation session in Chicago with well-respected retired JAMS Mediator Judge Richard Neville.  The negotiations took almost six additional months , and the settlement was not finalized in a term sheet until there had been many conversations and at least two telephonic conferences with this

Court assisting the parties in the proper direction. *Id*. Once the general terms of the settlement were reached, the parties continued to negotiate the specific provisions and language of the Settlement Agreement over a period of time. All negotiations were conducted with full information, at arm's length, with both parties vigorously asserting their respective positions. Frederick  Decl., ¶ 15.

### C.    The Settlement Terms And Conditions Offer Substantial Benefit To All Settlement Class Members

Benefit to the Settlement Class is the fundamental test of the reasonableness of a settlement.  Here, the proposed settlement provides remedies directly responsive to the primary relief sought by Plaintiffs: monetary relief for Settlement Class Members who were sent defective repossession notices, and the abandonment of any outstanding claimed deficiency balances. [Settlement Agreement, ¶ 5(A)]. As noted, such deficiency balances amount to more than $21 million for the class period. *Id*. Settlement Class Members will all receive a *pro rata* share of the $950,000 Settlement Fund, after deduction of attorneys' fees and costs, and the Plaintiffs' incentive payment. [Settlement Agreement, ¶ 5(H)(2)].  The Settlement also provides non-monetary benefits that significantly enhance its value to Settlement Class Members. It requires Wells Fargo to report Settlement Class Members' deficiency balances as zero to the credit reporting bureaus, thereby improving Settlement Class Members' credit. [Settlement Agreement, ¶ 5(A)(ii)]. Any residual funds will revert to a *cy pres* trust, and be donated equally to the Ohio Legal Aid Foundation and the Cleveland Food Bank, as a pass through to the Solon Mobile Food Pantry ("Charities").  The Settlement Administrator, 110 days after the checks are mailed to the Settlement Cash Refund Eligible Class Members, shall forward funds payable to the Charities to the escrow account of Class Counsel. Class Counsel shall remit the funds to the

12

Charities and provide proof of such payment to Wells Fargo's counsel. [Settlement Agreement, §§5(I)]

Thus, the Settlement Agreement provides substantial and meaningful relief, and in addition, provides Settlement Class Members clear notice so that they could make an informed decision about whether to participate. It is also noteworthy that Settlement Class Members will be entitled to receive all of the relief provided in the Settlement Agreement *without* having to submit a claim form.

Of course, the essence of a settlement is compromise. A settlement compromising conflicting positions in class action litigation serves the public interest. *In re Telectronics Pacing Sys.,* 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." ); *Enter. Energy Corp.* v. *Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 246 (S.D. Ohio 1991) ("The law generally favors and encourages the settlement of a class action.").

In evaluating a settlement, the trial court should not decide the merits, or proceed from the assumption that victory is assured and that all claimed damages are properly recoverable. *See In re Domestic Air Transportation Antitrust Litigation*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993). A settlement need not obtain one hundred percent of actual damages if it represents a knowing and intelligent compromise. *See Bennett v. Behring Corp.*, 737 F.2d 982, 987 (11th Cir. 1984) (settlement providing for $675,000 of maximum possible $12 million recovery adequate). In contrast, the Settlement here affords Settlement Class Members a large measure of the relief available to the Class should the case be tried, and as such, is demonstrably just and reasonable.

**D.  *Class Counsel Believes That The Settlement Is Fair, Reasonable And In the Best Interest Of Settlement Class Members***

13

The opinion of experienced class action counsel with substantial experience in litigation of similar size and scope is an important consideration. *Bronson v. Board of Educ.,* 604 F. Supp. 68, 71-72 (S.D. Ohio 1984). Judges should not substitute their own judgments as to optimal settlement terms for the judgment of the litigants and their counsel. *Id.; see also Ressler v. Jacobson*, 822 F. Supp. 1551, 1553 (M.D. Fla. 1992).

In deciding whether to finally approve a settlement courts should defer to the judgment of experienced counsel who have competently evaluated the strength of the plaintiff's case. *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983); *Enterprise Energy, supra*, 137 F.R.D. at 247 (endorsement of settlement by experienced counsel supported fairness, adequacy and reasonableness of settlement); *Ohio Public Interest Campaign v. Fisher Foods*, 546 F. Supp. 1, 11 (N.D. Ohio 1982) (opinion of counsel to be given great weight by the Court). Indeed, there is a "strong initial presumption" that an arm's length settlement arrived at by experienced counsel and premised upon sufficient information to evaluate the claims at issue is fair. *See Feder v. Harrington,* 58 F.R.D. 171 (S.D.N.Y. 1972).

Here, the proposed settlement is the product of extensive, adversarial, arm's length negotiations conducted by counsel experienced in all aspects of class action litigation, and particularly experienced in the consumer fraud context. Declaration of Ronald Frederick In Support of Final Approval of Class Action Settlement, Attorneys' Fees and Incentive Award ("Frederick Decl."), ¶¶ 1-8. As discussed above, the proposed settlement offers the Settlement Class a large measure of the relief sought and which could be obtained at trial. Thus, in counsel's view, the proposed settlement is fair, reasonable and in the best interest of the Settlement Class. Frederick Decl., ¶¶ 15-17.

**E.**     ***The Time And Expense Of Protracted Litigation Makes Settlement Appropriate***

Settlement promotes the interests of the litigants by saving them the expense of trial of disputed issues and reduces the strain on already overburdened courts.  *See Benson v. Newman*, 409 U.S. 1039 (1972); *Enterprise Energy, supra*, 137 F.R.D. at 247-48 (class action settlement serves interests of both litigants and public by avoiding a time-consuming trial and appeal).

Engaging in complex litigation of this nature is a very expensive, time-consuming process for the parties and the courts. With continued litigation of the issues raised in this action, Settlement Class Members who have already waited more than two and three years for resolution[1] would have to wait even longer before any resolution is reached, during which time the Class Representative would incur additional expenses in this litigation. Of course, this time and expense is not certain to pay off with a verdict in favor of the Class should this litigation culminate in a trial (and, ultimately, an appeal). *See In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 1029, 1013 (S.D. Ohio 2001)(risk, expense, complexity and duration of litigation favor settlement).

By reaching the proposed settlement, the parties have dispensed with the need for further protracted litigation. Upon final approval, if given, the proposed settlement will have established a significantly faster, and guaranteed favorable resolution of Settlement Class Members' claims against Wells Fargo.

**F.**     ***There Is No Opposition To The Proposed Settlement***

As noted above, notice was published in ten (10) prominent Ohio newspapers of general circulation and each Settlement Class Member was sent notice of the proposed settlement by first class mail addressed to his or her last known address. The envelopes were marked "address

---

[1] Plaintiffs filed this case in the Cuyahoga County Court of Common Pleas on March 2, 2012.

correction requested," and for any returned notice, the Settlement Administrator used its best efforts to obtain a current mailing address, including seeking an address correction through LexisNexis. In response to this notice program, no objections have been raised, and no Settlement Class Members have opted out.  Based upon this unanimously favorable response to the proposed settlement, there is no reason to delay final approval. *Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio, 2007) ("a small number of objections, particularly in a class of this size, indicates that the settlement is fair, reasonable and adequate"); *Kogan*, 193 F.R.D. at 503 ("in making this determination, the Court is greatly persuaded by the fact that none of the Class Members objected to the settlement agreement").

### G. The Parties Negotiated The Proposed Settlement In Good Faith

This lawsuit has been pending since March 2012. The proposed settlement was negotiated at arm's length, after a protracted and often contentious mediation process with some of it overseen by Judge Richard Neville [ret.]. Thus, there is not even a hint of bad faith or collusion surrounding the proposed settlement to undermine its fairness or adequacy.

## VI. The Court Should Certify The Proposed Settlement Class For Purposes Of Settlement

On January 22, 2014, the Court certified the proposed class for settlement purposes. [Order, ¶ 2]. No party or class member has objected to certification. In addition, nothing has changed since the Court's Order on Preliminary Approval that would make the class un-certifiable or that changes the basis on which it may be finally approved.  For this reason, Plaintiffs will not repeat the discussion of the reasons making certification of a settlement class appropriate here.  *See,* Memorandum In Support Of Motion For Preliminary Approval Of Proposed Class Action Settlement Agreement, pp. 8-16.

**VII.    The Court Should Approve Class Counsel's Fee Application And Plaintiffs'
Incentive Payment**

Class Counsel seek an award of attorneys' fees and expenses in the amount of $475,000,

less the costs of notice and administration which will be paid back to Wells Fargo from the

Settlement Fund, as reasonable compensation for obtaining the settlement now before the Court.

The requested fee award represents less than 2.0% of the total monetary recovery obtained for

the Settlement Class. This percentage is significantly below the 25% "benchmark" of the

recovery for attorneys' fees recognized by the courts. *See* Eisenberg & Miller, *Attorney Fees In*

*Class Action Settlements: An Empirical Study,* J. Empirical Legal Studies, Volume 1, Issue 1, at

73 (2004)(mean fee award for cases with class benefits ranging from $3.1 to $5.2 Million is 25%

of the fund and the median is 29.4% of the fund). The Settlement Agreement also provides for an

incentive award of $2,500 for each of the named Plaintiffs. The amounts of the requested fee and

incentive awards were clearly disclosed in the notice. No Settlement Class Member objected to

the requested attorneys' fees or the incentive award. The parties have stipulated to the amount of

attorneys' fees and the incentive award in the Settlement Agreement.

For the reasons set forth in greater detail below, Class Counsel's attorneys' fees request is

reasonable and fully warranted by the circumstances of this case. *See generally,* Frederick Decl.

Class Counsel filed and litigated this case on a purely contingent basis. Frederick Decl., ¶ 18.

The amount of the requested fee is substantially below amounts that Ohio courts have deemed

appropriate in similar cases. The results obtained for the class are excellent and achieved with

efficiency and skill. Plaintiffs were actively involved in the case and performed important services on behalf of the Settlement Class. Frederick Decl., ¶ 15.

> **A.      The Requested Fee Award Is Reasonable And Should Be Approved**

Apart from the excellent result obtained for the class, which is the primary determinant of the appropriateness of the requested fee, other considerations relevant to the fee review include the nature of the litigation, whether sufficient discovery was conducted to enable an informed settlement decision, and the context of the fee negotiation process. Consideration of each of these factors, which are discussed more fully below, supports approval of the fee requested.

> **1.      The Requested Fee of Less Than 2.0% Of The Monetary Class Recovery Is Manifestly Reasonable In Relation To The Size Of The Settlement And The Number Of Class Members Who Will Benefit From The Settlement**

The standard applied to determine the percentage awarded is reasonableness under the circumstances of a particular case.  *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996) (stating that an "award of attorneys' fees in common fund cases need only be 'reasonable under the circumstances'").

Although the actual percentage awarded to class counsel consequently varies from case to case, "[g]enerally, in common fund cases, the fee percentages range from 10 to 30 percent (10% - 30%) of the common fund created."  *See In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 1029, 1042 (S.D. Ohio 2001) (approving fee award of over $16,000,000, representing nearly 27% of the common fund); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (noting that $1,000,000 fee award was 20% of the common fund and thus was "still within the lower range of reasonableness, which has been designated as between twenty to fifty percent of the common fund"); *In re DPL Inc., Securities Litigation*, 307 F. Supp. 2d 947, 954 (S.D. Ohio 2004) (awarding fee of 20% of the common fund).  Indeed, some courts have targeted 25 percent

18

as the "benchmark" award which should be given in common fund cases. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("25 percent has been a proper benchmark"), *cited in Telectronics Pacing Systems*, 137 F. Supp. 2d at 483. *See also* Eisenberg & Miller, *supra*.

The request for a $475,000 award of attorneys' fees, costs, and expenses, less the cost of notice and administration which is payable out of the Settlement Fund back to Wells Fargo, easily meets the standard of reasonableness when evaluated as a percentage of the fund.  The requested award represents less than 2.0% of the total value of the monetary portion of $22,148,061.94 million settlement to the class,[2] far below the "benchmark" typically awarded in class action cases.  Hence, from a purely numerical perspective, the requested award of attorneys' fees is well below the accepted standard.

The settlement also provides non-monetary benefits that significantly enhance its value to Settlement Class Members.  It requires Wells Fargo to report Settlement Class Members' deficiency balances as zero to the credit reporting bureaus, thereby improving Settlement Class Members' credit scores. [Settlement Agreement, p. 7]. Although not economically quantifiable, these benefits enhance the value of the settlement to Class Members and should be considered in determining the reasonableness of the attorneys' fee. *See* Fed. R. Civ. P. 23(b) advisory committee's note ("…it is important to recognize that in some class actions the monetary relief obtained is not the sole determinant of an appropriate attorney fees award").

---

[2] Under Ohio law, the more than $21 million in credits to customer accounts for unpaid deficiency balances is properly included in the total value of the common fund.  *See Rocca v. Wilke*, 53 Ohio App. 2d 8, 10 (1st App. Dist. 1977) (finding that trial court properly included "credits" to taxpayer accounts in calculating the total amount of the common fund).

As such, the requested fee award is extremely reasonable:  it provides compensation to Class Counsel that is well below the standard percentage awarded to attorneys in other cases while providing the class with a measure of recovery that far exceeds the norm, and represents a substantial portion of realistically recoverable damages.

**2.      The Requested Fee Is Reasonable Relative To The Risks Involved In This Litigation**

The fee request becomes even more modest when one looks beyond the numbers to the equitable factors and policy interests at stake in this particular action.  Class Counsel has prosecuted this action since March 2012, undertaking significant investigation and legal work in the process, as well as making an extended effort to settle this case. Although Class Counsel believes that Plaintiffs have meritorious claims, success is never assured in litigation. The efforts of Class Counsel allowed them to negotiate a high value settlement for the Settlement Class, and to avoid the risk and uncertain outcome of a fully contested matter.

**3.      The Non-Collusive Nature Of The Settlement Negotiations Demonstrates That The Fee Request Is Fair And Reasonable**

The context in which the parties negotiated the agreement on fees also demonstrates its reasonableness. As discussed above, the settlement negotiations themselves were detailed and prolonged, and were conducted at arm's length, under the auspices of a respected Mediator, Richard Neville. The parties submitted mediation briefs and legal authorities to Mediator Richard Neville prior to mediation, and engaged in a full day session before bridging some of the gap to settle. The parties then continued to negotiate eventually coming to terms on the material components of settlement. The parties then hammered out the details of the settlement and the language of the agreement over the course of several months. The requested attorneys' fee was

negotiated only after all material terms of the settlement had been agreed upon. Frederick Decl., ¶ 18.

Wells Fargo is represented by exceedingly competent and well-respected outside counsel, well-informed in fee jurisprudence and skilled in legal negotiation. As such, the end result of these negotiations, which reflects both sides' informed judgment of what is reasonable as a fee in these circumstances, is entitled to a great deal of weight in considering approval of the Stipulation. As Judge Wolin explained in *In re Prudential Ins. Co. of America Sales Practices Litig.*:

> The parties in this case followed the proper procedure [that recommended by the Third Circuit Task Force]. Plaintiff's counsel and Prudential entered into fee negotiations only after the Settlement Agreement was otherwise negotiated. . . . Under these circumstances, there is no reason to believe that Prudential's counsel – having already fixed the other terms of the Settlement Agreement . . . consented to the requested fee for any reason other than their belief in its reasonableness under all the circumstances of this case.

962 F. Supp. at 577.[3]

### 4.    The Requested Fee Is Also Reasonable Under The Lodestar and Multiplier Cross-Check

To determine the reasonableness of the fee award provided for in the Settlement Agreement, the Court may apply two standards of evaluation: the percentage-of-the-fund approach or the lodestar-and-multiplier method. In a settlement such as this, where a common

---

[3] *See, e.g., In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 U.S. Dist. LEXIS 14337 at *13 (C.D. Cal. June 10, 1992) ("[T]he fee was negotiated at arms' length with sophisticated defendants by the attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class. . . . [T]he Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated. . . ."); *In re M.D.C. Holdings Sec. Litig.*, [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,474 at 97,487-88 (S.D. Cal. Aug. 30, 1990) ("Because this Court believes the parties should be encouraged to settle all their disputes as part of the settlement . . ., including the amount of the fee, it believes that if the agreed-to fee falls within a range of reasonableness, it should be approved as part of the negotiated settlement between plaintiffs and defendants.").

fund is created, the jurisprudence tends to favor the percentage of fund approach. *Telectronics,* 137 F. Supp. 2d at 483, *citing In re Southern Correctional Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997); *Bowling,* 102 F.3d at 1278-79. In recent years, some courts have adopted a blended approach of applying the percentage-of-the-benefits method and cross-checking it against the lodestar and multiplier approach (or vice versa). *In re Sulzer Hip Prosthesis Litigation*, 268 F. Supp. 2d 907, 923 (N.D. Ohio 2003) (noting that courts use each method to "cross-check the other and ensure that each attorney who is awarded a common benefit fee receives a reasonable one"); *see also* Alba Conte, *Attorney Fee Awards*, § 2.06 at 38-39 (2d ed. 1997).

The lodestar calculation also reflects reasonable hourly rates.  Class Counsel's firm is an experienced class action litigation firm with particular expertise in litigating post-repossession notice claims, the claims at issue in this case. *See* Frederick Decl., ¶¶ 3-8. Class Counsel's firm rates are consistent with prevailing market rates for attorneys in Ohio of comparable skill and experience.  Ronald Frederick's rates were approved by the court in *Washington v. Spitzer Mgmt. Inc.,* Case No. CV-00-414549 (Cuyahoga Court of Common Pleas) (June 20, 2005) (J. Matia); *Hall v. Capital One Auto Finance, Inc*., Case No. 1:08-CV-1181 (Northern District Ohio, Oct. 22,  2010 (J. Nugent). Frederick Decl., ¶ 19.

The use of the lodestar analysis as simply a cross-check against a percentage of fund award is appropriate in class cases and gives courts additional justification for the determination that a fee is reasonable.  Where significant results are obtained, courts have consistently used high multipliers of the lodestar in awards compensating the attorneys who achieved those results. *See, e.g., Weiss v. Mercedes-Benz of North America, Inc.,* 899 F. Supp. 1297, 1304 (D.N.J. 1995) (lodestar multiplier of 9); *In re RJR Nabisco, Inc., Sec. Litig*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,984 at 94,267 (S.D.N.Y. 1992) (lodestar multiplier of 6); *Cosgrove v. Sullivan,*

759 F. Supp. 166, 169 (S.D.N.Y. 1991) (lodestar multiplier of 8.74); *Donald R. Szydlik v. Associates National Bank*, No. 92-1025, slip op. at 8 (W.D. Pa. Sept. 19, 1997) (lodestar multiplier of 8.5)*; Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 479, 203 Cal. Rptr. 389, 398 (Cal. Ct. App. 1984) (lodestar multiplier of 12).

Here, the resulting lodestar of Class Counsel's firm, based upon the number of hours reasonably expended multiplied by the reasonable hourly rates as of the filing of this brief is approximately $153,800.[4]  Frederick Decl., ¶ 18. Class Counsel conservatively estimates that, by the conclusion of the final approval and attorneys' fees hearing in this matter, the lodestar will exceed $165,000. Frederick Decl., ¶ 18.  Considering both the projected final lodestar and the additional costs and expenses, the requested fee award will represent a multiplier of less than 2.6. The substantial benefits achieved for the class in this case fully justify the negotiated fee using the lodestar multiplier cross-check as well.

   **5.    The Absence Of Objections Demonstrates That The Fee Request Is Fair And Reasonable**

Not one class member has objected to settlement or to the requested attorneys' fee. The amounts of the requested fee and incentive awards were clearly disclosed in the notice. The absence of any objections to the requested awards further demonstrates that the awards are fair and reasonable.

**VIII.   The Class Representatives' Request For An Incentive Award Is Reasonable And Warranted By The Circumstances Of This Case**

The Settlement Agreement provides for a modest incentive award to each Plaintiff in the amount of $2,500. [Settlement Agreement, p. 12]. This award is intended to recognize the time

---

[4]  This lodestar figure does not include any future work involved with monitoring the Settlement Agreement or responding to class member inquiries.  Nor does it include costs and expenses.  As is verified by the cost records submitted herewith [Frederick Decl., ¶ 18], Class Counsel has incurred $5926.52 in costs and expenses as of the date of filing this brief.

and effort that the Plaintiffs have invested in the case on behalf of the Class. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997). *See Enter. Energy Corp.,* 137 F.R.D. at 251 (approving incentive awards of $50,000 to each of the class representatives out of a settlement fund of $56.6 million); *In re Dun & Bradstreet,* 130 F.R.D. 366, 373-74, (S.D. Ohio 1990) (approving incentive awards ranging from $35,000 to $55,000 out of a $18 million settlement fund); *Brotherton v. Cleveland,* 141 F.Supp.2d 907, 913-14 (S.D. Ohio 2001) (granting a $50,000 incentive award out of a $5.25 million fund).

In this case, the Class Representatives:  (1) assisted counsel in investigating and substantiating the claims alleged in this action; (2) assisted in the preparation of the complaint; (3) attended court proceedings including Mr. Reese flying to Cleveland from Dallas; (4) and reviewed pleadings, correspondence, other documentation received from Class Counsel in order to keep themselves apprised of the progress of the litigation, as well as the settlement proposal. Frederick Decl., ¶ 15.  Moreover, as with any party who files a civil action, the Class Representative undertook the financial risk that, in the event of a judgment in favor of Wells Fargo in this action, they both could have been personally saddled with the costs awarded in favor of Wells Fargo.

The requested incentive award was described in the Notice to the Settlement Class.  No Settlement Class Member objected to the incentive award being requested.  In the aggregate, the incentive award represents only a miniscule percentage (0.0056%) of the total monetary recovery.  In light of the work that the Class Representative performed on behalf of Settlement

Class Members, and the Settlement Class Members' response to the settlement, the requested incentive award is reasonable and appropriate.

## IX.    Conclusion

For all of the foregoing reasons, Plaintiffs requests that this Court approve the Settlement Agreement as fair, adequate and reasonable.


Respectfully submitted,

*/s/ Ronald Frederick*
Ronald I. Frederick (#0063609)
Frederick & Berler, LLC
1370 Ontario St., Suite 1240
Cleveland, Ohio 44113
(216) 502-1055 (phone)
(216) 566-9400 (fax)

*Attorney for Plaintiffs*


## Certificate of Service

I hereby certify that on May 27, 2014 a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.


*/s/ Ronald Frederick*
Ronald Frederick


25